UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BEVERLY PINE AND ROBERT PINE
    Plaintiffs

v.                                                        C.A. NO. 04-11518 NMG

JEAN ARRUDA AND HAWTHORNE
COUNTRY CLUB, INC.
    Defendants

## MEMORANDUM IN SUPPORT OF OPPOSITION OF DEFENDANT, JEAN ARRUDA, TO MOTION OF PLAINTIFF, BEVERLY PINE, TO COMPEL PRODUCTION OF DOCUMENTS

Defendant, Jean Arruda ("Arruda"), has opposed the Motion of Plaintiff, Beverly Pine (hereinafter, either "Plaintiff" and/or "Pine") to Compel her to produce a statement furnished to her insurer. She offers this memorandum in support of her opposition.

### I.    INTRODUCTION

On or about November 17, 2004, Pine served Interrogatories and a Request for Production of Documents Arruda, seeking, among other items, "copies of any and all statements signed or unsigned whether recorded by mechanical or electronic means, made by Jean Arruda and/or Hawthorne Country Club". Arruda objected to providing any such statements protected by the attorney/client and work product privileges. On or about September 12, 2005, Pine filed a Motion to Compel seeking the production of any such statement(s), suggesting an *in camera* review by the Court to determine if any privilege applies.

### II.    FACTUAL BACKGROUND

The incident which forms the basis for this suit occurred on July 11, 2001. Pine alleges he was injured when a golf cart drove over her at the Hawthorne Country Club. Both Pine and Arruda were present at the scene and both were involved in the same accident after they had been riding together in the same golf cart.

### III.   ARGUMENT

#### A.   Rule 26(b)(3) Does Not Allow For The Discovery Of Arruda's Statement.

Plaintiff first argues that Rule 26(b)(3) of the Federal Rules ("FRCP") allows for the discovery of Arruda's statement to her insurer. 26(b)(3) provides, in relevant part, that:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insured, or agent) **only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.** (emphasis added).

In this case, Pine cannot demonstrate a substantial need for the statement she seeks. And far from being faced with "undue hardship" she has already obtained the substantial equivalent of the material.

If materials sought by the moving party are considered to be work product, they may still be obtained if the moving party can demonstrate a substantial need for the documents and is unable to obtain the substantial equivalent without undue hardship. Colonial Gas Company v. Aetna Casualty & Surety Company, 139 F.R.D. 269, 275 (D. Mass. 1991). Courts should deny the discovery of work product if the moving party can obtain the information by taking the deposition of witnesses. Additionally, neither "inconvenience nor expense constitute sufficient cause to find undue hardship." id.

Arruda's deposition was taken on June 27, 2005. During that session, she testified at some length about how the incident occurred. She did not claim to have "forgotten" any material facts. (See Deposition transcript excerpts attached as Exhibit "A". pp. 89-116). Arruda has also

2

provided interrogatory answers, and a copy of her own hospital emergency room records from the day of the accident. Both contained statements as to how the incident occurred. And she gave testimony concerning her discussions with Plaintiff shortly after the incident (Exhibit "A" at 165-70).

Pine's husband (co-plaintiff, Robert Pine) was also deposed. He described relevant conversations with Arruda and others shortly after the incident (Robert Pine transcript, pp. 65-80, Exhibit "B"). He recalled Arruda visiting him and his wife after Ms. Pine was discharged from the hospital (id., pp. 87-89), and "suing home owner's insurance coverages" was discussed with Arruda at that early time (id., pp. 91-92). And Mrs. Pine had her own conversations with Ms. Arruda during this time (Exhibit "A", pp. 130-134).

Plaintiff has failed to schedule depositions of any other witnesses identified by the Defendants. As the Colonial Gas court noted, another basis for the denial of discovery of work product exists when the moving party can obtain the information through the deposition of witnesses. The only deposition the plaintiffs have taken was of Arruda. This lack of effort does not demonstrate undue hardship in attempting to obtain the "substantial equivalent" of Arruda's statement to her insurer in January, 2002.

Plaintiff relies upon two cases to support her argument. They are readily distinguishable from this case. Savoy v. Richard A. Carrier Trucking, Inc., 176 F.R.D. 10, 14-15 (D. Mass. 1997), involved an action for personal injuries against a truck driver, a trucking company, and the company's insurer. The plaintiff sought to obtain a statement given by the driver shortly after the incident. The Court concluded that the Plaintiff was entitled to these statements, but gave several significant reasons supporting its decision. The most important of these was the reported loss of a log book required to be kept by Federal Regulations. The defendants claimed that the book was not in their possession. In this situation, [the driver's] nearly contemporaneous statement had no real equivalent. The documents sought were also relevant to the plaintiff's

3

"bad faith" claims, and concluded that documents deemed work product may be justifiably produced to an opposing party when they are within the exclusive knowledge of the other party and relevant to a claim of bad faith. id. at 15. These factors do not exist in the present case.

In City of Springfield v. Rexnord Corporation, et al., 196 F.R.D. 7 (D. Mass. 2000), the Court considered the plaintiff's motion to compel the production of certain documents which the defendants claimed where protected under either the attorney/client or work product privilege. The Court concluded that a substantial need existed for the production of the documents because it would be practically impossible for the plaintiff to obtain the "substantial equivalent" of the information without undue hardship. The documents in question were twenty (20) years old and the Defendants admitted that the whereabouts of some of the participants were unknown. id. at 10. This is also entirely factually inapposite to the matter before this Court.

Finally, the Plaintiff has herself attempted to avoid disclosing her own conversations with Defendants on flimsy, contrived grounds. For example, please note the following interrogatory questions and replies from questions directed to her by Arruda (Exhibit "C") (#8, below) and the Hawthorne Country Club (Exhibit "D") (#25 and #26, below).

> Interrogatory No. #8: Give the name and address of each person known or believed by you to have knowledge, to have been a witness to, or having given a statement about, the incidents and events alleged in your complaint, list the name and address of each person you plan to call as a witness at any trial on the merits of this action, and identify any written or recorded statements or summaries thereof obtained or provided by any person listed in your response to this question.
>
> Answer:     Plaintiff objects to this request because the Discovery sought is obtainable from other source that is more convenient, less burdensome, or less expensive. And in further answering, without waiving the above-objection, Plaintiff responds that she does not have the requested information in her possession.

Interrogatory #25:    Please state whether you, your attorneys or anyone acting on your behalf had any conversation with any person whom you understand to be employed by, or acting on behalf of the defendant, Hawthorne Country Club, or any other defendant, at any time following the incident alleged in your complaint.

4

Answer: Objection. I object to this request to the attorney/client's privilege which seeks documents or other materials which were prepared in anticipation of litigation or for trial. Furthermore, I object because responding to this Interrogatory would require disclosure of the "Mental impressions, conclusions, opinions, or legal theories discussed between Attorney and Client.

Interrogatory #26: Please state for each such conversation identified in your answer to the preceding Interrogatory:

    a.    the date and time of each conversation;
    b.    where each conversation took place;
    c.    whether the conversation was in person or by telephone; and
    d.    in as much detail as you can recall, what was said and by whom.

Answer: Objection. I object to this request to the attorney/client's privilege which seeks documents or other materials which were prepared in anticipation of litigation or for trial. Furthermore, I object because responding to this Interrogatory would require disclosure of the "Mental impressions, conclusions, opinions, or legal theories discussed between Attorney and Client.

In seeking to compel the production of documents protected by the work product privilege, Plaintiff must show a substantial need for the documents and that she is unable to obtain the substantial equivalent without undue hardship. In this case, Plaintiff is unable to make either of the required showings and her Motion to Compel should be denied.

**B.    Arruda's Statements Are Privileged Work Product And Were Made In Anticipation Of Litigation**.

Plaintiff next argues that any statement by Arruda could not have been made in anticipation of litigation and, therefore, should be disclosed. See Plaintiff's Memo. at 4-5. Any statements taken **after** the attorney for Plaintiff notified NGM of a potential claim were prepared for or in anticipation of litigation and should be considered work product. Indeed, the statement sought was also taken **after** the previously-described discussions of "suing home owner's insurance", clearly alerting Arruda to potential litigation.

In examining a claim that a document is work product, courts generally engage in a three part inquiry and must consider: (1) whether the item is a document or tangible thing, (2) whether it was prepared in anticipation of litigation, and (3) whether it was prepared by or for a party, or

5

by or for <u>its</u> representative. <u>See</u> <u>Pasteris v. Robillard</u>, 121 F.R.D. 18, 20 (D. Mass. 1988). The issue here relates to the second of these – whether the document in question was prepared in anticipation of litigation.

In <u>Pasteris</u>, the plaintiff's attorney had informed the defendants' insurance company of a claim by letter in November, 1986. The statement of the defendant had been taken by the insurance company in August. The Court discussed the chronology of events which had occurred in the case and concluded that:

> [t]he statement of [the defendant] was obtained by the insurance company three months prior to plaintiffs securing counsel, more than one year prior to defense counsel's correspondence with plaintiff's counsel, and almost a year and a half prior to the commencement of suit. Therefore, the facts suggest that the statement of [the defendant] to his insurer was made prior to any litigation likely being on the horizon … **The circumstances of this controversy lead the Court to conclude that litigation could not have been reasonably anticipated until after plaintiff's counsel sent the November 13, 1986 letter to defendants' insurance company**. Thus, this Court finds that the August 4th statement by [the defendant] to his insurance company was done in the ordinary course of business and is not shielded by Fed.R.Civ.P. 26(b)(3).

<u>Pasteris</u>, 121 F.R.D. at 21 (emphasis added).

<u>See, also</u>, <u>McNulty v. Bally's Park Place</u>, 120 F.R.D. 27, 29 (E.D. Penn. 1988) (finding that statements were taken in anticipation of litigation when they were taken <u>after</u> plaintiff's attorney sent a letter to defendant indicating that he represented plaintiff in relation to fall which had been investigated; court also noted that work product can apply "if the prospect of litigation is identifiable because of specific claims that have already arisen, the fact that litigation is still a contingency at the time the document is prepared has not been held to render this doctrine inapplicable").

<u>Before</u> being officially notified of a claim, Arruda had conversations with the Pines concerning the incident. She discussed a luncheon meeting in which Mrs. Pine asked how Arruda would feel if she brought a claim against (Arruda's) homeowners insurance for the incident (Exhibit "A", p. 166). As the conversation continued, Arruda recounted that Ms. Pine

6

indicated "that's what insurances (sic) are for" and she didn't mind if (Arruda) sued (Pine's) insurance company as a countersuit". Arruda said that she was "pretty much dumbfounded" by this (id., pp. 166-167).

Shortly thereafter, Pine's present attorney sent Arruda a letter of representation (copy at Exhibit "E"). The Arrudas promptly forwarded that to their insurer (the National Grange Mutual Insurance Company) ("NGM"). The letter of representation was acknowledged, in writing, on September 25, 2001 (Exhibit "F").

In her self-serving Affidavit of September 12, 2005, Attorney Benson asserts that she discussed this matter with that NGM adjuster (Ms. Pavone). She asserts that on all of these occasions, it was "every indication that the matter would settle without the necessity of litigation". This is quite remarkable since the first of the conversations took place on the very day that Ms. Pavone first acknowledged receiving counsel's letter of representation. The Benson Affidavit further alleges that on December 6, 2001, Ms. Pavone "acknowledged that she had a statement from Mrs. Arruda" (See Affidavit, ¶ 6). Finally, her affidavit concedes that at that point Ms. Pavone advised that NGM "might not accept one hundred (100%) percent of the liability" - certainly suggesting that this was not a case that would clearly "settle without the necessity of litigation".

In stark contrast, Ms. Pavone contends that she never discussed "liability" nor that the matter would "settle without the necessity of litigation" with Ms. Benson. (See Pavone Affidavit at Exhibit "G"). More importantly, Ms. Pavone clearly indicates that the statement in question was taken on January 10, 2002 and was in anticipation of potential litigation (see id.)

In discussing this matter and in furtherance of counsel's duty to confer, prior to seeking an Order of this Court, Ms. Benson wrote to the undersigned attorney for Arruda on August 17, 2005 (copy of correspondence at Exhibit "H"). The Court will note that this letter from Pine's attorney does <u>not</u> discuss any alleged statements by Ms. Pavone that "liability would not be an

7

issue". Indeed, this was never mentioned prior to submission of the Motion in question with its accompanying Affidavit (see Affidavit of John B. Reilly at Exhibit "I").

## IV.    SUMMARY AND CONCLUSION

It seems clear from the foregoing that Plaintiff is not only distorting the facts but fails to come within shouting distance of articulating a substantial need for the relief sought in this Motion. Given her own presence at the scene of the incident and discovery provided in this case, it also seems apparent that the present Motion is nothing more than a "fishing expedition" through which Plaintiff hopes to find some sort of prior "inconsistency" and/or other information not germane or necessary to the presentation of her case. This is improper and her Motion should be denied in each and every respect. Furthermore, Arruda asks that this Court consider and allow her sanctions for the time expended in responding to both this Motion and Plaintiff's failure to agree to a reasonable extension of time for Arruda to present her Affidavits and argument to this Court in a reasoned manner.

    Jean Arruda
    By her Attorney,


    /s John B. Reilly
    John B. Reilly, Esq. (BBO #545576)
    John Reilly & Associates
    300 Centerville Road
    Summit West - Suite 330
    Warwick, Rhode Island 02886
    (401) 739-1800
    Fax: (401) 738-0258

**DATED:**     October 18, 2005