# Exhibit "C"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BEVERLY PINE
and ROBERT PINE,
      Plaintiffs

V.                                                    C.A. NO. 04-11518 NMG

JEAN ARRUDA and HAWTHORNE
COUNTRY CLUB, INC.
      Defendants

## ANSWER OF BEVERLY PINE TO FIRST SET OF INTERROGATORIES OF DEFENDANT, JEAN ARRUDA

      Pursuant to United States District Court Local Rule 33.1, Plaintiff, Beverly Pine responds as follows to these Interrogatories. Beverly Pine expressly reserves her right to supplement these answers.

**OBJECTION:**

      The Plaintiff objects to the Definitions, Directions, and Instructions in Defendant's First Set of Interrogatories to the extent those definitions, directions or instructions impose upon the Plaintiff an obligation or burden which is greater than or inconsistent with the Federal Rules of Civil Procedure and/or Local Rules of the United States District Court for the District of Massachusetts

      1.    State your exact and complete name; give any alias or other name by which you are or have ever been known; set forth your date of birth; social security number; home or residence address; marital status; and your occupation.

      ANSWER:    Beverly Janet Pine, f/k/a Beverly Bush, f/k/a Beverly Bush Pine, f/k/a Beverly Violet; Born: August 12, 1932; 25 Reardon Drive, Middletown, Rhode Island 02842; Married for 22 years to Robert Pine; Retired Hair Dresser.

      2.    State whether or not you were employed at the time of the accident to the present, and for each employer, state the following:

      (a)    the employer's name, place of business, and/or company (hereinafter ("employer");
      (b)    your title or position with said employer;
      (c)    whether the employer was incorporated or otherwise doing business under an assumed name;

      (d)    if such employer is incorporated or otherwise doing business under an

    assumed name, state the name, residence address and home telephone number of the person or persons who are the principal owners and managers of said entity;
(e) list the name, address and telephone number of each and every employer you have had since the time of the accident;
(f) your title or position with each such employer;
(g) set forth your hourly, weekly, monthly, or yearly earnings for each.
(h) if you were unemployed, whether or not you were receiving State or any type of public assistance and the amount of the assistance you received.

  ANSWER: Not applicable. Retired hairdresser. Homemaker

  3. If there was a period of time during which you claim you were prevented from carrying on your employment or occupation as an alleged result of the injuries incurred by this accident, describe the period of time as well as the amount of money you thereby contend to have lost and how that is and/or was calculated.

  ANSWER: Not applicable, Retired.

  4. If you were unemployed at the time of this accident, please state the reason for your unemployment; whether it was due to an injury or medical condition; the type of injury or condition and the physician who diagnosed your injury or condition; any reports documenting this injury or condition; whether you were able to return to work, if so, the date you were able to return to work.

  ANSWER: Not applicable, Retired.

  5. Give a description of each injury, of a personal nature or otherwise, you claim to have suffered as a result of the incidents or events involved in this litigation.

  ANSWER: When the golf cart struck me, it knocked me down and ran me over and did the following:

  Crushed my head and face, fractured three of my ribs, broke my right clavicle, hurt my left should, put a hole in my thigh, almost cut off my leg; caused me to have stitches. My leg wound later became infected. My shoulder later required surgery.

  6. Give a detailed, chronological account of how the accident, which is the subject of this litigation occurred, including in your answer your activities for a period of twelve hours immediately preceding the incident, the exact location and character of the spot at or upon which the incident occurred, what specifically initiated or caused the accident, what parts of your body came in contact with all objects or surfaces and the order in which such events took place. Include in your answer any equipment or product malfunctions you claim existed or which allegedly contributed to such accident.

3

ANSWER: Went to bed early the night before the event. Got up at 5:00 am that morning to get ready for the event.

On July 11, 2001, 1 was invited to play golf in a member guest tournament at Hawthorn Country Club in North Dartmouth, Massachusetts. A member of that golf club, Jean Arruda, had invited me. She had taken care of all the expenses of that tournament. She said to be there at 7:00 am. Our tee time was for 8:00 am and we would have time for coffee. It was to be a gala event with a luncheon and prizes. Jean said the course was in great shape with very steep hills.

We started on the 6th hole because it was a shotgun start there were players on every hole. We made a pit stop at the club house after playing three holes then returned to the course to resume play, while playing the next hole the weather started to change.  The course siren sounded for everyone to vacate the course because of the thunder and lightning. Our foursome then proceeded to go back to the clubhouse for shelter. We were on the lower level where the coffee and pastries were served. I went to the locker room and could see the women members had put there bags inside getting them ready to put in their lockers, being club members that is where they would put their clubs.

Upon leaving the locker room, I then saw Jean, she told me that it was starting to rain heavy and that she was going to bring my clubs closer to the club house where there was an over hanging roof protecting the entrance of the club house. She felt the bag would not get so wet if they were there. I told her that I would g o with her to help but she said "no no, I would take care of it".  She had left to get the cart; I then started after her but to my surprise she had already gotten into the cart and was driving it towards the entrance of the club.  When approaching her, I saw the clubs laying flat across the seat of the cart.  I was standing in front of the cart. Jean then started to walk towards me.  Jean then said something like wait a minute, I think I can get them just a little better. She then stepped onto the cart by the driver's side, reached for the bag of clubs to pull them a little closer to the dryer side of the cart closer to the club house.  All at once the golf cart leaped forward with tremendous force.  I screamed something like Jean the cart is hitting me. I could not hold the cart back.  Then I heard Jean screaming.  At this time, I could feel the cart over me and crushing my shoulder. I prayed, I thought I was going to die. I could not move, then I felt the cart being lifted off me. I then remember the girls being around me putting something over me to shelter me from the rain.  I remember the men from the rescue saying, "Hey, we better get her off the wet ground, the lightning is very close."  I remember them cutting off my clothes and not really caring about them doing that.  I just wanted to get out of the rain and to safety.  The rescue then transported me to the nearest hospital, St. Luke's Hospital in New Bedford, Massachusetts.

I remember the hospital being real busy and I was laying on the hospital gurney for a long time with no one attending to my needs.  Then, finally, the hospital surgeon came to stitch my leg.  They had to use three layers of stitching because it was cut down to the bone.  I was shocked when they removed the tourniquet and say what had happened.  I remember Jean at the hospital.  I was x-rayed and treated for a hole in my thigh, broken ribs, broken clavicle and a bruise to the side of my head.  I remained at St. Luke's Hospital for three days.  While at St. Luke's, I remember asking for ice chips and never getting any.  I was not at all comfortable at the hospital and suffered a good deal for those three days I was at St. Luke's.

I was released from St. Luke's Hospital on Friday the 13th of July. On Saturday the 14th, my leg did not look good to my husband and my tongue was sore and dry and everything I ate seemed like it had pepper on it. My husband called my neighbor, who is studying to be a nurse and she said I should go to the emergency room at the Newport Hospital. At 8:45 PM, my husband drove me to the hospital, they took x-rays of my leg and called my doctor to look at my leg. When Dr. Zaklynsky saw my leg, he said that it was infected. I was ordered to stay in the hospital and be on antibiotics. He also said that I was dehydrated. I ended up staying at Newport Hospital for four more days before finally being released. When I got home, my husband took the next week out of work to take care of me.

7. Give the name and address of the person or persons whom assisted you immediately following the incident, any treatment to which they rendered, the substance of any communications between you and each such person, and if necessary, a description of the person or persons who assisted you, if you do not know his, her or their exact name or names.

ANSWER: Plaintiff objects to this request because the Discovery sought is obtainable from other source that is more convenient, less burdensome, or less expensive. And in further answering, without waiving the above-objection, Plaintiff responds that she does not have the requested information in her possession.

8. Give the name and address of each person known or believed by you to have knowledge, to have been a witness to, or having given a statement about, the incidents and events alleged in your complaint, list the name and address of each person you plan to call as a witness at any trial on the merits of this action, and identify any written or recorded statements or summaries thereof obtained or provided by any person listed in your response to this question.

ANSWER: Plaintiff objects to this request because the Discovery sought is obtainable from other source that is more convenient, less burdensome, or less expensive. And in further answering, without waiving the above-objection, Plaintiff responds that she does not have the requested information in her possession.

9. State whether you have consulted, engaged or otherwise obtained the assistance of any expert or expert witness with respect to any of the issues in this case; and if so, as to each such expert, state his or her:

ANSWER: Plaintiff objects to the request to the extent that it exceeds to scope of permissible discovery regarding experts pursuant to Fed. R. Civ. P Rules 26(b)(6)(4) and 26(a)(2). Notwithstanding this objection, your Plaintiff responds that she intends to call her treating physicians to testify with regard their respective areas of expertise and her treatment. Beverly Pine expressly reserves her right to supplement this response without waiving the above objection.

    (a)    name, home address, business address and occupation;
    (b)    educational background including schools, colleges, universities attended, and as to each, the certificate or degree thereof,

  (c) employment history, giving the name(s) of employers, the nature of employment and the periods, by encompassing dates, of such employment;
  (d) field of expertise and the description of the license or licenses with respect thereto, including the period of the license and the name of the issuing officer or agency;
  (e) name and address of each professional society or organization of which he/she is a member;
  (f) a description of each writing, if any, offered by such expert, giving the title, date and place of publication;
  (g) the subject matter upon which this person is expected to testify, to include the substance of the facts, opinion and/or conclusions to which the person is expected to testify and the summary of the grounds for each opinion; and
  (h) the name and address of the person having present custody or control of each such report.

  10. State whether you consumed any alcoholic beverages, prescriptions, or other drugs at any time during the twenty-four (24) hours before you fell, indicating when and what was consumed and where this took place.

  ANSWER: I consumed no alcohol the day or night before, nor the day of the accident. I did take my doctor prescribed medication for a thyroid condition and for Parkinson Disease. By the way, I did not fall, I was knocked down by the golf cart!

  11. Describe all photographs, movies, films, videotapes, X-rays, diagrams, maps, charts, debris, graphs or other tangible items, objects or exhibits relating in any way to the persons, places or things involved in this accident, giving the name and address of each person, firm or corporation having present custody or control of same.

  ANSWER:  Plaintiff objects to the request because the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive. Furthermore, Plaintiff objects to this request because the discovery sought is unreasonably cumulative or duplicative of the Request for Production of Documents Propounded to this Plaintiff. Without waiving the foregoing objections, Your Plaintiff responds that photographs were taken of her on July 11, 2001, the date of the incident before she was injured. A copy of said photograph is attached. Additional photographs were taken by Robert Pine, Plaintiffs spouse, on February 2, 2002. Which photographs depict the disfigurement of Plaintiff's right lower leg and calf.  Plaintiff s spouse also took photographs when Plaintiff was coming home from the hospital in July of 2001. Three photographs are attached.

  12. State the name and address of each clinic, emergency room or hospital at which treatment was sought for or with respect to those injuries, if any, mentioned in your answer to the preceding question, give the exact date or dates upon which treatment was sought at any such clinic, emergency room or hospital, and set forth an itemized account of all charges or expenses incurred as a result of any visit to or treatment of the same.

  ANSWER:

St. Luke's Hospital, New Bedford, Massachusetts; Newport Hospital, Newport, Rhode Island; University Orthopedics, Newport, Rhode Island; Lahey Clinic, LCF Foundation, Inc., 41 Mall Road, Box 541, Burlington, Massachusetts 01805 -00002

13. State the name and address of each physician, doctor, chiropractor or other provider of physical or mental health care or services from whom treatment was sought for or with respect to those injuries, if any, you claim to have suffered in the incident referenced in your complaint, give the date or dates upon which treatment was sought from any physician, doctor or other provider of physical or mental health care or services, and set forth an itemized account of all charges or expenses incurred as a result of any visit to or treatment with the same.

ANSWER:

| **DATE** | **DESCRIPTION** | **AMOUNT** |
|---|---|---|
| 07/30/01 | Southcoast Hospitals Group | $4,302.03 |
| 08/31/01 | Orest Zaklynsky, M.D. - medical rpt Bills | $3,525.00 |
| 07/15/01 | Newport Hosp - 7/15 - 7/18/01 | |
| 07/15/01 | Newport Hosp - Dr. Zaklynsky consult and office notes of 8/15/01 - 8/17/01 | |
| 04/23/01 10/17/01 | Medical bills - London Health and Dr. Ferguson (08/01/01 - 10/17/01) | |
| 12/06/01 | University Orthopedics medical bills (Dr. Ferguson) treatment dates 07/15/01 - 11/21/01 | $1,745.00 |
| 07/15/01 | Dr. Ferguson surgical treatment (07/15/01) | |
| 1/10/03 | Lahey Clinic (9 pages) Dr. Wilk's Operative Report (7/31/02 - 8/5/02) | |
| **DATE** | **DESCRIPTION** | **AMOUNT** |
| | Lahey Clinic Bills (5/31/02 - 10/25/02) | $3,785.00 |

| | | |
|---|---|---|
| 9/14/03 | Lahey Clinic (17 pages)<br>Dr. Wilk's chart notes<br>(5/31/02 - 9/10/02) | |
| 10/23/03 | Lahey Clinic<br>Dr. Wilk's Narrative Report | |
| 7/13/01 | St. Luke's Hospital<br>Treatment Record<br>Admitted: 7/11/01 | |
| 7/11/01 | London Health Administration | $897.00 |
| 1/15/04 | University Orthopedics Physical Therapy<br>Records & Bills | |
| 7/11/01 | Stat Ambulance Services Report | |
| 6/13/04 | London Health Administrators (Lien) | $6,027.27 |
| | Medicare Payments | $ 393.90 |
| 9/30/02 | Visiting Nurse Services | 1,033.00 |

     14.    State the name and address of each nurse, therapist or other person who may have been employed to provide household help or care as a result of or with respect to those injuries, if any, referenced in your complaint, give the exact date or dates upon which treatment was sought from any nurse, therapist or other provider of household help, care or services and set forth an itemized account of all charges or expenses incurred as a result of any visit to or treatment with the same.

     OBJECTION:  Plaintiff objects to this request because the Discovery sought is obtainable from other source that is more convenient, less burdensome, or less expensive. And in further answering, without waiving the above-objection, Plaintiff responds that she does not have the requested information in her possession.

     ANSWER:  My husband, Robert Pine cared for me in the days following the incident and for over a year thereafter.

     15.    If you have ever suffered any injuries of the same or a similar nature to these detailed in your answer to Question five (5) above, or if at the time of the accident or thereafter you suffered from any other injury, disease or abnormality, give the date(s) and a particular description of each such condition or injury, setting forth the name and address of any clinic, emergency room, hospital, physician, dentist, doctor, chiropractor or other provider of medical care from whom treatment for the same was sought and the date or dates of such treatment or assistance.

8

ANSWER: I have a thyroid condition and the early stages of Parkinson's Disease. Treating with Dr. Friedman, Pawtucket Memorial Hospital, Pawtucket, Rhode Island.

16. Have you; since the time of the incidents or events which are the subject of this litigation, completely recovered from any injury or condition mentioned in your answer to Questions five (5) and fifteen (15), and if not, describe with particularity such injury or condition from which you had not so recovered and how it affected you immediately before and after the accident.

ANSWER: Since this event, I have lost feeling in my right foot, due to the leg laceration. I also have limitation of movement in my shoulder I will never completely recover from these injuries.

17. If before or at the time of this accident, you were diagnosed as having or suffering from dizziness, headaches, nervous disorders, hypertension, fainting spells or any disease or condition causing such physical reactions, describe such conditions in detail, giving the name and address of any physician, hospital, clinic or other health care provider who has seen, diagnosed or treated you for the same.

ANSWER: I have not suffered from any of the conditions listed above prior to the incident. Please see answer to #15.

18. Do you claim that any of the injuries you allegedly suffered as a result of the incidents or events involved in this litigation and as described in your answer to Question five (5) above, are permanent, and if so, give a particularized description of such allegedly permanent condition and describe how this is manifested or shows itself

ANSWER: Yes. My legs are scarred. Everyone always said I had beautiful legs. I used to like to wear low cut clothes, I cannot do that anymore either.

I have already explained my loss of feeling in my foot and limited movement in my shoulder. Additionally, I have an ugly scar on my shoulder from the operation.

19. Has anyone prescribed future medical treatment, therapy or care or with respect to those injuries, if any, described in your answer to question five (5) above, and if so, state the name and address of any person, firm or entity having done so and give a detailed description of the anticipated nature and extent of such future care, further stating its anticipated cost and identifying the person, firm or entity from which such estimate was obtained.

ANSWER: No.

20. Set forth the exact dates, if any, during which you contend you were totally disabled following this accident and the exact dates to which you contend you were partially disabled following this accident.

ANSWER: I was totally disabled from July 11, 2001 through February 1, 2002. I was partially disabled from February 2, 2002 through April 16, 2004.

21. Describe those daily activities, hobbies or other personal pursuits, if any, you claim you were unable to perform or enjoy as a result of the injuries you claim to have suffered in this accident, stating how often this activity was conducted for the year <u>preceding the accident</u>, how often you were able to perform or enjoy the activity <u>after the accident,</u> giving the names and addresses of any clubs, spas, groups or associations of which you were a member during any relevant period of time herein.

ANSWER: Before the injuries I was able to enjoy all daily activities, hobbies and personal pursuits. After theses injuries - even with physical therapy, I was unable to fix my hair for a period of six months after the incident.

I was unable to play golf for over a year and six months. I was a member of the Montaup Country Club located at 500 Anthony Road, Portsmouth, Rhode Island.

I was unable to do anything with my husband for over a year. I was unable to have intimate sexual relations with my husband for over a year.

I could not clean my house, wash or iron our clothes, go to any Malls, do any grocery shopping, go or be taken out to dinner, visit my four children at their residence, go out to lunch with any of my friends, or go to any Bingo games. I was unable to go dancing with my husband.

22. To any extent not previously done in your answers to these questions, describe with thorough detail any other claims for damages (and the amounts thereof) to which you contend you are entitled as a result of the incidents or events involved in this litigation, further identifying any logs, diaries, records or other written memoranda you have or anyone acting for you has kept which list the same or any other claims or any other conditions discussed in your answer to any of the preceding Questions.

ANSWER: I feel that this tragedy was not my fault and I did not deserve what happened to me that day and the events thereafter.

23. List the name and address of each insurance company, governmental agency or health care provider to whom you have presented a claim for benefits and/or received any payments for damages, bills, costs, lost income, or other benefits in any way arising from or related to the accident in question and those injuries described in your answer to Question five (5), above, indicating any amount(s) received as a result thereof, from whom and when the same was so received.

ANSWER: My husband's health insurance company from his job. London Health, 40 Commercial Way, East Providence, Rhode Island 02819, TEL: (401) 4354700. I am also on Medicare.

10

24.     If you, or to your knowledge, any of the other parties or witnesses (including expert witnesses) identified in these responses to interrogatories has or have ever been convicted or pleaded guilty to any criminal offense, give the date of each such plea or conviction, the name and address of each court or other tribunal (including military and/or foreign) before which such matter was heard, and state the final disposition/sentence in each such matter.

ANSWER: I do not know.

Signed under the pains and penalties of perjury.

                                          Plaintiff,
                                          Beverly Pine,

                                          /s/ Beverly Pine
                                          Beverly Pine

As to Objections:

                                          /s/ Karen Augeri Benson
                                          Karen Augeri Benson
                                          Law Office of Alan Amaral
                                          251 Bank Street
                                          Fall River, MA 02720
                                          TEL: (508) 676-0011
Dated: January 17, 2005                BBO# 628469

### Certificate of Service

I, Karen Augeri Benson, attorney for the above-named Plaintiffs, certify that a copy of Answers of Beverly Pine to First Set of Interrogatories of Defendant, Jean Arruda, was mailed, postage prepaid on the 18th day of January, 2005, to John B. Reilly, Esq., John Reilly & Associates, 300 Centerville Road, Summit West - Suite 330 Warwick, Rhode Island 02886

                                          /s/ Karen Augeri Benson
                                          Karen Augeri Benson