UNITED STATES DISTRICT COURT
STATE OF MASSACHUSETTS

Beverly Pine and Robert Pine     :
Plaintiffs                       :
                                 :
                                 :
Vs.                              :     C.A. No. 04 11518NMG
                                 :
Jean Arruda, and                 :
Hawthorne Country Club, Inc.     :
Defendants                       :

### PLAINTIFFS, BEVERLY PINE AND ROBERT PINE, OPPOSITION TO DEFENDANT, HAWTHORNE COUNTRY CLUB, INC.'S MOTION FOR SUMMARY JUDGMENT

Now come Plaintiffs, Beverly Pine and Robert Pine, and pursuant to Fed. R. Civ. P. 56(c) hereby object to the Defendant Hawthorn Country Club's Motion for Summary Judgment. As reasons therefore, and in support thereof, your Movants rely on the within Memorandum of Law, the attached Exhibits and such further and other arguments as Counsel may present at hearing.

I.  **Summary of Facts**

Plaintiff, Beverly Pine was injured at the Hawthorne Country Club on July 11, 2001. On that date, she was a guest of Jean Arruda at a ladies golf tournament. Golf carts were provided for the tournament by the Defendant Hawthorne Country Club (hereinafter "HCC"). The carts were set up "in different areas of the parking lot and that was set up by the golf director depending on the hole that you would start golfing on" (Recorded statement of Jean Arruda, page 3 line 8, January 10, 2002,  Exhibit A). Tournament play was halted due to inclement weather. When the ladies returned from the course, the golf carts were parked in the lower parking lot where the cars were located. (Recorded statement of Jean Arruda, p. 5 line 4, Exhibit A). The players returned to the

clubhouse. Mrs. Pine's golf clubs remained in the golf cart. Later, Mrs. Arruda went out to retrieve Mrs. Pine's clubs. She moved the golf cart by getting in and driving it to a different area where there was an overhang to protect the cart. (Recorded statement of Jean Arruda, p. 6 line 4, Exhibit A). While Mrs. Arruda was engaged in moving the golf cart, it moved forward and struck Mrs. Pine.

II.   **Statement of Law**

   A.   **Summary Judgment Standard**. The burden upon the moving party is to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Qestec, Inc. v. Krummenacker*, 367 F.Supp.2d 89 D.Mass., quoting rule 56(c) (2005).

   "Ordinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact. However, a judge may decide the issue as matter of law when no rational view of the evidence permits a finding of negligence. . . .Because the burden is on the movant, the evidence presented is always construed in favor of the party opposing the motion, and the opposing party is given the benefit of all reasonable inferences that can be drawn from it. *Goulart v. Canton Hous.Authy.*, 57 Mass. App. Ct. 440, 441 (2003).

   The requirement of coming forward with the evidence demands that the non-moving party "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for Trial". See, *Celotex Corp. v. Catrett*, 447 U.S. 317, 324, quoting rule 56(c) (1986).

   B.   **Negligence – Defendant's Duty to Plaintiff**. An owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the

premises. See, *Davis v. Westwood Group,* 420 Mass. 739 (1995). This duty includes an obligation to "maintain his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk," *Mounsey v. Ellard,* 693, 708, 297 N.E.2d 43 (1973), and "to warn visitors of any unreasonable dangers of which the land owner is aware or reasonably should be aware." See, *O'Sullivan v. Shaw*, 431 Mass. 201, 204 (2000).

As property owners the defendants had a duty to take into account the extant circumstances (including those known to them and those of which they should have known) and to maintain their property in a reasonably safe condition. It was, therefore, incumbent upon them to act reasonably in regard to factors such as the likelihood of injury to persons foreseeably upon the premises, the seriousness of any potential injury, and the burdens associated with risk avoidance. *Fithian v. Reed*, 204 F.3d 306 (1st Cir. 2000). This standard – reasonable care under all the circumstances - may at times involve a duty to prevent foreseeable injury caused by a third person who has come upon a defendant's premises., *Fithian* citing *Flood v. Southland Corp.*, 616 N.E.2d 1068, (Mass. 1993).

### III.     Argument

A.     Plaintiff's injuries were within the reasonably foreseeable risks of harm created by Defendant, Hawthorne Country Club's negligent conduct.

Beverly Pine contends that her injuries were within the reasonably foreseeable risks of harm created by Defendant, Hawthorne Country Club's negligent conduct. Not only did HCC fail to provide adequate covered parking, they failed in any way what so ever to warn the club patrons of the hazards associated with operating the carts. Additionally, they failed to provide adequate staffing to assist the players to deposit the carts. Given the number of players at the club that day, it was reasonably foreseeable that when play was called,

whether for lunch, or as did occur, due to inclement weather all of the carts would return to the club en mass. See, *Poskus v. Lombardo's of Randolph, Inc.,* 423 Mass. 637, 638-41, 670 N.E.2d 383 (1996).

The Defendant's reliance on *Staelens v. Dobert,* 318 F.3d 77 (1st Cir. 2003) is misplaced. The case is distinguishable in that the Plaintiff in *Staelens* suffered no injury from the collision itself, nor from any risk of harm resulting there from. In *Staelens*, some three to five hours passed without incident. Thereafter, *Staelens* was injured from an independent agency's conduct.

Here, the cart on which Ms. Arruda and Mrs. Pine were traveling was parked by Ms. Arruda, such that the golf clubs were exposed to the elements. After approximately thirty (30) minutes, Ms. Arruda went back to the cart to address the fact that the clubs were exposed to the elements. But for the inadequate preparation on the part of Hawthorne Country Club to anticipate the needs of the tournament players, this incident would not have occurred. The cart would have been safely parked and the clubs safely stored.

B.  <u>The issue of whether the Defendant's failure to provide secure parking for the golf carts caused the incident does not require expert opinion.</u>

A factual determination as to whether the Plaintiff's injuries were foreseeable is a matter for the Jury. The question of proximate cause, i.e. whether a risk of harm was reasonably foreseeable, is ordinarily for the Jury. Summary Judgment may be appropriate when the evidence and the reasonable inferences join there from lead to but one conclusion. See, *Staelens v. Dobert,* 318 F.3d 77, 79 (1st Cir. 2003). Here it is a factual inquiry, well within the life experience and knowledge of the average Juror.

The Defendant, HCC was well aware of the danger presented by the improper operation of the golf carts. HCC established marked areas, separate from the automobile parking, specifically for this purpose, designating where the

carts could be operated. Then, on July 11, 2001 they failed to enforce these parking rules. See, photographs of the premises, indicating parking rules and regulations for carts (Exhibit B).

With regard to the liability of HCC for failing to secure the golf carts once they were parked, the Court should look to the degree of control exercised by HCC over the carts. Jean Arruda testified at her deposition on June 27, 2005, that the players were unable to choose their own golf carts because the carts were designated with their names prior to commencing the tournament. (Arruda Dep. 47:19-21, 50:6-12, , June 27, 2005) (Exhibit C). The golf carts already had the keys in the ignition, thus, the players were not required to retrieve the cart assignment and keys from the clubhouse, which was the normal procedure. (Id at, 50:18-22, 38:1-3, 39:20-24) (Exhibit C)

The Plaintiff, Beverly Pine admits numbers one through six of Defendant, HCC's, Statement of Undisputed Facts. The Plaintiff, Beverly Pine, denies numbers seven through nine of Defendant, HCC's Statement, and states affirmatively that: notwithstanding her deposition testimony, it is disputed what HCC failed to do in order to prevent her injuries. Plaintiff contends HCC failed to operate the Country Club in a safe manner free of hazards. This was the Defendant's duty to Mrs. Pine and the other guests. Defendant, HCC, owed Plaintiff a duty to maintain its premises and its equipment in such a manner so as to allow safe tournament play .

It has been established through deposition testimony that it was already raining when the Club horn sounded to call the players off the field on July 11, 2001. (Pine Dep. 59:20, June 6, 2005) (Exhibit D).

The Affidavit of Beverly Pine dated June 7th 2006 (Exhibit E), goes beyond the pleadings to establish the following facts:

1. There was no one from Hawthorne Country Club to direct or assist in where to park the golf carts when the players came in from the course.
2. Each driver had to find a place to park the carts.
3. There were inadequate spaces to park the carts to keep them out of the rain.

The issues of whether there was sufficient parking and whether there was a sufficient place for guests to place their golf bags are disputed material facts and genuine issues for trial.

Mrs. Arruda testified that there was insufficient covered parking for the tournament player's carts and, as a result, she was forced to leave the cart parked partially in an unsheltered location.  It is disputed whether, when play was delayed, there was inadequate space to park the golf carts out of the rain. What is established by the testimony of Mrs. Arruda is that there were fifteen (15) or more carts coming in from play at the same time and that some were in the parking lot and some were under cover. (Arruda Dep. 80:9-13 (Exhibit C).

Further, the evidence demonstrates that after the horn sounded, Mrs. Arruda and Mrs. Pine parked their cart in the automobile parking lot because "everyone was coming in and so they were all under there. They all parked their carts under there, and then everybody was parking as close as they could to the clubhouse." (Arruda Dep. 79:20-24, Exhibit C).   When Beverly Pine and Mrs. Arruda came in from play, Mrs. Arruda parked the golf cart in an area designated as an automobile parking area.  (Arruda Dep. 86:19-22, Exhibit C).  Further, the golf carts were stored in a designated area of the parking lot which is not under a canopy.  (Arruda Dep. 86:8-14, Exhibit C).

Beverly Pine contends that the issue of whether there was a place for the guest members to put there clubs is also a disputed fact for trial.  Mrs. Pine contends that Mrs. Arruda put her clubs in a locker when play was suspended

6

due to inclement weather. (Pine Aff., Exhibit E). In contrast, Mrs. Arruda stated that everyone put their bags under the awning located near the clubhouse door, including the other women in the foursome, (Arruda Dep. 83:14-24, 84:1, 122:11-13, Exhibit C). It is also disputed, that the guests were not provided with a locker or any designated area to store their clubs in the event of halt of play. (See, Pine Aff. Exhibit E; Arruda Dep. 122:11-13, Exhibit C).

The issues of whether there was sufficient parking and whether there was a sufficient place for guests to place their golf bags are material facts which have the "potential to effect the outcome of the suit under the applicable law." See, N*ereida-Gonzales v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

### IV.   Conclusion

In summary, Defendant Hawthorne Country Club has presented an insufficient basis for this Court to grant Summary Judgment. The Defendant has failed to meet its burden. The facts alleged by the Plaintiff, if proven to be true, clearly support the allegations raised as to Hawthorne Country Club on all Counts, and the issues should be presented to a jury.

WHEREFORE, your Plaintiffs respectfully request that this Court deny Defendant's Motion for Summary Judgment and award such further and other relief as deemed appropriate.

Respectfully Submitted,
Counsel for the Plaintiffs,

_____
Karen Augeri Benson, Esquire
Law Office of Alan A. Amaral
251 Bank Street
Fall River, MA 02720
Tel: (508) 676-0011
BBO #628469

7

## **CERTIFICATION**

I, Karen Augeri Benson, Esquire, hereby certify that on the _____ day of June, 2006, I served the foregoing Opposition to Motion for Summary Judgment by mailing/hand delivering/faxing a true and complete copy of same, to:

Lauren Motola-Davis
Michael T. Farley
121 South Main Street, Suite 600
Providence, RI 02903

JOHN REILLY & ASSOCIATES
Summit West – Suite 330
300 Centerville Road
Warwick, RI 02886

_____