# Exhibit "A"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Beverly Pine and Robert Pine
Plaintiffs

vs.                                                                  C.A. No. 04 11518 NMG

Jean Arruda, and
Hawthorne Country Club, Inc.
Defendants

### ANSWERS (WITH OBJECTIONS) OF DEFENDANT, JEAN ARRUDA, TO INTERROGATORIES PROPOUNDED BY THE PLAINTIFFS

Defendant, Jean Arruda (hereinafter "Arruda") responds to Plaintiffs' Interrogatories ("the interrogatories") as follows:

### GENERAL OBJECTIONS

The following general objections are applicable to and are hereby incorporated by reference into each specific response to an individual interrogatory, reflecting that this defendant:

A.      Objects to the Interrogatories to the extent that they call for information which is protected from discovery by the: attorney/client privilege; attorney work-product doctrine; by Rule 26(b)(3) of the Rules of Civil Procedure ("RCP"); any other applicable privilege or doctrine, or is otherwise outside the scope of RCP 26.  To the extent that any such information is or may be divulged in response to the Interrogatories, the divulging of any such information is inadvertent and is not to be deemed a waiver of the privileged in question, or any other applicable privilege with respect to the divulged information or any other information.

B.      Objects to the Interrogatories to the extent that they seek information which is available from public records and thus, equally as available to any party; already in the possession of the interrogating party, or that can be derived or ascertained from public records.

2

C.     Reserves the right to supplement, modify, or add to any answers to the Interrogatories, but does not hereby undertake to do so except to the extent required by RCP 26(e) and 33.

D.     Objects to any interrogatories to the extent that they create burdens beyond those specifically recognized by the RCP.

E.     Objects to divulging any information falling within one of the general objections set forth above or specific objections set forth below. To the extent that any such information is or may be divulged in response to the Interrogatories, the divulging of such information is inadvertent and is not to be deemed a waiver of the objection in question, or any other objection. Moreover, any answers and objections to the Interrogatories are being provided without waiver or prejudice to the right, at any time, to raise objections to (a) any further demand for discovery involving or relating to the matters raised in the Interrogatories, of (b) statements made in responses and/or objections.

F.     Reserves the right, at any time, to raise further objections to these questions and/or any further demand for discovery involving or relating to the matters raised in these interrogatories.

G.     Each of the foregoing General Objections is restated and incorporated, by reference, in each specific answer that follows.

**INTERROGATORIES**

**INTERROGATORY NO. 1**

**Please state your full name, social security number, birth date, marital status, residential address, occupation, and business address, and your precise interest and/or status with respect to this litigation. If you are answering on behalf of a corporation or legal entity, please state your position and title in said corporation and/or entity.**

>  ANSWER:  This defendant further objects to furnishing her social security number as it is confidential, privileged and its revelation is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving such objections, Jeanne Norma Arruda, d.o.b. 9/20/55, married, 179 Hathaway Commons Road, Fall River, MA 02720, administrator, 1565 North Main Street, Suite 406, Fall River, MA 02720, answering as a party defendant to whom these questions are directed.

**INTERROGATORY NO. 2**

**Please give a detailed chronological account of how the injury to Beverly Pine referred to in the Complaint occurred, including in your answer, your activities for a period of 12 hours immediately preceding the incident, the exact location and character of the spot at or upon which the incident occurred, what specifically initiated or caused the incident, what part of Mrs. Pine's body came in contact with all objects or surfaces and the order in which all such events took place. Please include in your answer any equipment or product malfunctions you claim existed or which allegedly contributed to such events.**

ANSWER:   This defendant further objections to the extent that this question calls upon her to make a determination as to (a) whether and (b) how an "injury" of plaintiff, Beverly Pine, "occurred", what "specifically initiated or caused" the incident, and other matters that are dependent upon further discovery and/or purport to improperly shift such plaintiffs' burden of proof.  Without waiving such objections, during the period of 12 hours immediately preceding the incident, I was at home sleeping by 10:30 p.m. on the night before the day of the incident.  That morning, I arrived at the Hawthorne Country Club shortly after 7:00 a.m. and had breakfast.  Then we (the members or my foursome, namely Beverly Pine, Cynthia Labouliere and Elaine Glowacki) (after this point referred to as "we") left the clubhouse at about 8:00 a.m. We received instructions from the pro in the parking lot and then proceeded to the sixth hole to begin play.  As we played, the weather began to change and become overcast.  After we teed off from hole number 4, a horn blew, signaling us to stop and return to the clubhouse.  We left our balls where they landed and proceeded to the parking lot.  By the time we reached the parking lot, it began to rain.

There was a thunderstorm coming, so the golfers returned with their golf carts to the parking lot and I think that most removed their clubs to bring them under a shelter near the clubhouse.  Ms. Pine and I shared a cart.  We removed our golf bags from the back of the cart and began walking to the clubhouse.  Ms. Pine stopped and said she was going to leave her clubs in the cart.  I told her to give her clubs to me and I would carry her them in for her.  She said no, they would be "OK" in the cart.  I asked again, but she insisted she wanted to leave them in the cart.  She placed them on the passenger's side

with the bottom of the bag on the floor and the top of the bag leaning up against the back of the seat.

When we got to the clubhouse, we were told that this was reported to be a passing storm and that we would probably be able to resume play once it went through the area. We sat in the clubhouse for a while. The storm began to get very strong, with torrential rain and lightening. I became worried that Ms. Pine's clubs were still in the cart and would be saturated and possibly ruined by the rain. I told her that I was going to go and get her bag and that she should wait inside the clubhouse. She said, "I'll go for them" and I said "no, just wait here, there is no sense in us both getting wet". (The real reason I wanted her to stay inside was that I knew she probably could not carry them.) She again said that she would go to get the bag and clubs. Once again, I insisted that she stay in the clubhouse and that I would go for her clubs.

When I got outside, I noticed for the first time that there was enough room under the overhang outside the shelter to bring the cart up and park it there. So, instead of carrying the clubs back to shelter, I drove the cart up to the overhang near the clubhouse and parked it there. At that point, I noticed Beverly standing outside in front of the cart. I put on the parking break and got out of the cart. She asked me if I thought her clubs would still get wet or would be OK under the overhang. I went around the back of the cart to its passenger's side but before I realized what was happening, the cart jumped forward. Beverly did not step aside. She went backwards a few steps. The cart moved forward with a jerking motion. As Beverly stepped backwards she fell onto a grassy area of the first hole. The cart continued forward and landed on top of Beverly. While all this was happening, I was following the cart. I bent down and lifted the cart up by the back

bumper and threw it forward over Beverly. This flung me forward and I landed approximately 20 feet beyond where Beverly was lying. The golf cart was later found in the woods.

**INTERROGATORY NO. 3**

**Please describe in as much detail as possible the location of the golf cart at all material times on July 11, 2001.**

ANSWER: This defendant further objects to this interrogatory to the extent that it is repetitive of question two (2), above, and calls upon this defendant to determine what time or times might be viewed by plaintiffs as "material". Without waiving such objections, please refer to my answer to interrogatory two (2).

**INTERROGATORY NO. 4**

**Describe in as much detail as possible the provision, if any, which the Defendant, Hawthorne Country Club, had for the safety of the participants in the Member Guest Tournament on July 11, 2001.**

ANSWER: Unknown.

**INTERROGATORY NO. 5**

**Please state for how long you were at the Hawthorne Country Club that day, including in your answer your time of arrival, your tee time, and the time at which you ceased golfing and returned to the club house.**

7

> ANSWER: I arrived shortly after 7:00 a.m. The tee time was at about 8:00 a.m. We stopped golfing at approximately 10:15 a.m. I remained at the Club until about I was taken by ambulance to the hospital, which may have been about 11:00 am, however, I am not sure on the exact time.

**INTERROGATORY NO. 6**

**If you claim that the incident referred in the Complaint resulted from a lack of care by the Plaintiff, Beverly Pine, set forth as fully and as specifically as you can what acts, conducts, or admissions you rely on as to such lack of care.**

> ANSWER: This defendant further objects to this question to the extent that it seeks to shift the burden of proof to this defendant, calls for this defendant to reach conclusions of law, and that the final response to these issues will be dependant upon further discovery, trial testimony, and seeks the work product of my attorney. Without waiving such objections, it was Ms. Pine who placed her golf bag in the cart in a position that apparently allowed it to activate the cart, causing it to move forward. Additionally, Ms. Pine could have remained safely in the clubhouse while I retrieved the golf bag (as I had asked her to), but chose to come outside, took a position standing in front of the cart, and then tried to walk backwards rather than moving out of the path of the cart.

**INTERROGATORY NO. 7**

**If you claim that the Plaintiff's injury resulted from the negligence of some other person or entity, please set forth the name, address, occupation or occupations of such individuals or entities.**

ANSWER: This defendant further objects to this question to the extent that it seeks to shift the burden of proof to this defendant, calls for this defendant to reach conclusions of law, and that the final response to these issues will be dependant upon further discovery, trial testimony, and seeks the work product of my attorney. Without waiving such objections, not determined at this time.

**INTERROGATORY NO. 8**

**Did anyone prior to the date of the incident ever complain to the Defendant, Hawthorne Country Club, Inc., its agents, servants, or representatives of the condition of the golf carts used by members and guests?**

ANSWER: Not to my knowledge.

**INTERROGATORY NO. 9**

**If there were any conversations material hereto between you and the Plaintiff immediately prior to, at the time of, and immediately subsequent to, the time of the incident referred to at the time of the Complaint, specify fully, stating the substance of what the Plaintiff said and what you said.**

ANSWER: On May 27, 2001, Robert and Beverly Pine were guests at my daughter's wedding. It was then that I asked her to be my guest at the Member/Guest golf tournament on July 11, 2001. She responded that she didn't think so because she was not feeling too well. She told me she had been feeling dizzy and off balance for some time. I told her to think about it and I would contact her to see what she decided. When I called her in June to check, she said that she had been feeling better and felt she could

9

participate.  She also stated that the dizziness and off balance feeling she had been experiencing had caused her to fall down in the past, but seemed to have gotten better.

After the accident, I visited Beverly on two occasions at her home.  During both visits, we talked about the accident.  During these conversations, she and Robert Pine assured me that none of this was my fault.  They claimed that Yamaha Golf Cart Company was at fault for not having some type of mechanism to prevent this type of accident.

On another occasion, I picked Beverly up at her home and brought her to a beauty supply store in Seekonk, to go shopping.  After that, I took her to lunch.  During lunch, she said she had to ask me something.  She proceeded to ask me how I would feel if she put a claim against my homeowner's insurance for the accident.  She said that she and Robert had seen several lawyers.  She told me that she and her husband wanted to put a claim through in case all of her medical bills were not paid.  I reminded her that she had health insurance to cover this, but she said she was concerned that if Robert lost his job at Stop and Shop they could lose their medical coverage and she would be left with bills.  She also mentioned to me that it wouldn't bother her if I sued her homeowner's insurance for my injuries – "that is what insurance is for".  My husband had told me that Robert Pine had said about the same thing to him at work (that we should sue each other's insurance for the accident).

**INTERROGATORY  NO. 10**

**State the name and address of all persons who to your knowledge were witnesses of the incident, which is the subject matter of this action.**

ANSWER:  Cynthia Labouliere, 309 Renaud Street, Fall River, MA 02721; Elaine Glowacki, 52 Paul James Drive, Tiverton, RI 02878; and Gisel Papas 98 Lafayette Street, New Bedford, MA 02745.

## INTERROGATORY  NO. 11

**Kindly identify each and every expert that you reasonably anticipate or expect to be called at the trial of this case, including in your answer:**

    **a.  name, business and residential address;**

    **b. Educational background, including all degrees and/or honors received;**

    **c.  employment history and training history, including positions held, dates of same and name(s) and address(es) of the employer(s);**

    **d.  a list of all cases in which said expert has testified as such, including the jurisdiction, dates of testimony and areas of expertise in which said expert(s) testified;**

    **e.  all professional associations, including offices held, if any;**

    **f. please identify all publications, books and articles in which the expert was the author or contributor (specify which).**

   ANSWER:   This defendant further objects to the extent that this question seeks information beyond that required by the Rules of this Court.  Without waiving such objections, no determination has been made as of this time.

## INTERROGATORY  NO. 12

**With respect to each expert witness whom you expect to be called for testimony on behalf of the defendant at trial, please state, specifying separately as to each expert;**

    **a.  the substance of the facts and opinions to which each expert is expected to testify;**

  b. a summary of the grounds for each opinion of each such expert.

  ANSWER: No determination has been made at this time.

## INTERROGATORY NO. 13

**Kindly state in detail the contents of all opinions to which each expert may be expected to testify.**

  ANSWER: No determination has been made at this time.

## INTERROGATORY NO. 14

**Kindly state in detail a summary of the grounds for each opinion listed in your answer to the preceding interrogatory and state in detail the substance of all facts upon which such opinion(s) are based as well as the documents relied upon by said expert.**

  ANSWER: This defendant further objects to the extent that this question seeks information beyond that required by the Rules of this Court. Without waiving such objections, no determination has been made as of this time.

## INTERROGATORY NO. 15

**State whether the expert has ever examined any records of the Plaintiff in this case and, if so, identify such records as have been examined.**

  ANSWER: This defendant further objects to the extent that this question seeks information beyond that required by the Rules of this Court. Without waiving such objections, no determination has been made as of this time.

**INTERROGATORY NO. 16**

**State whether you consumed any alcoholic beverages, prescriptions, or other drugs at any time during the twenty-four hours before this incident, indicating when and what was consumed and where it was consumed.**

    ANSWER: None.

**INTERROGATORY NO. 17**

**If your answer to the preceding Interrogatory was in the affirmative and you claim that any such prescriptions or other drugs were prescribed to you by a physician, doctor, chiropractor or other provider of physical or mental health care services, please give the date or dates upon which treatment was sought from any such physician, doctor, or other provider of physical or mental health care services, and provide the name, address, and telephone number of said health care provider.**

    ANSWER: Not applicable.

Subscribed and sworn under the pains and penalties of perjury this 10th day of January, 2005.

                                                /s/ Jean Arruda
                                                Jean Arruda

As to objections:

 /s/ John B. Reilly
John B. Reilly, Esq. (#545576)
John B. Reilly & Associates
Summit West - Suite 330
300 Centerville Road
Warwick, RI  02886
Telephone:  (401) 739-1800
FAX:  (401) 738-0258

## CERTIFICATION

It is hereby certified that a copy of the foregoing has been sent, via first class mail, postage prepaid, to **Lauren Motola-Davis, Esq.**, Morrison Mahone, LLP, 121 South Main Street, Suite 600, Providence, Rhode Island 02903 and **Karen Augeri Benson, Esq.**, Law Offices of Alan A. Amaral, 251 Bank Street, Fall River, Massachusetts 02720 this 26th day of January, 2005.

 /s/ John B. Reilly