ANSWER: As stated before, we were not able to participate in the activities that we enjoy doing together. We could not enjoy golfing, fishing, riding the motorcycle, going out for dinner and socializing with our friends at the club. As I mentioned earlier in question #7, Beverly and I spend our recreational time together. Even when I used to go hunting, I always took her with me to Pennsylvania. I would try to do both hunting and golf. My enjoyment from the above activities doing them and involving her as much as the activities themselves. In addition to the fact that our recreational activities were greatly curtailed during this time period, I should also point out that for the first six months of Beverly's convalescence that she could not even really leave the house. For these six months, I did not go out of the house either, unless it was to go to work or in some way related to helping with Beverly's recovery, Doctors visits, etc. Someone had to be with her as much as possible during this time, and recognizing this I spent my time there with her. This is my second marriage, and all of our kids were grown for the most part. We do things together, having no ties to small children like most newly weds.

19. Set forth, with particularity, any changes in your spouse's personality or disposition toward you following the accident described in your complaint, contrasting the same with what you recall them to have been before the accident and the effect, if any, on you of any changes in your spouse's personality or disposition.

ANSWER: I think sometimes my wife feels she does not look the same for me. She feels the scars on her leg and shoulder has some effect on me. What bothers me the most is that she feels that way.

20. Give a particular description of any claims or injuries of yours you claim to be of a _permanent_ nature and describe how this is manifested or how it affects you on a daily, weekly, or other periodic basis.

ANSWER: When we go golfing now, my wife is very paranoid with our golf cart and other golf carts. She seems to be over cautious, walks while I ride and sometimes this slows play down a little, and I become aware of that. We have been members at Montaup Country Club for 21 years and I never once thought we played slow. Every time I do maintenance to my golf cart

8

and see what the under carriage looks like, it bothers me to think one of these ran over my wife. We are both so lucky she is alive today. We have both been through a lot of changes. I guess you never really know how lucky you are until something like this happens to you. Maybe I'm a little paranoid too.

21. Itemize the damages you claim to have incurred and which are the basis of your demand for relief in this lawsuit, and if you are unable to do so, please so state.

ANSWER: I did not play golf for over 18 months. 80 percent of my golf has always been with my wife. I am not one who plays with the guys. Beverly is the one who introduced the game of golf to me. I belong to no leagues, only play with my boss two or three times a month because he likes my golf course. We joined this club to golf together and this is what we used to do. If you ask members that know me well, I'm sure they will agree with what I have just said. You can also ask our club Pro Steve Demos.

22. To any extent not previously done in your answers to these questions, describe with thorough detail any other claims for damages (and the amounts thereof) to which you contend you are entitled as a result of the incidents or events involved in this litigation, further identifying any logs, diaries, records, or other written memoranda you have or anyone acting for you has kept which list the same or any other claims or conditions discussed above.

ANSWER: None.

23. If you, or to your knowledge, any of the other parties or witnesses (including expert witnesses) identified in these responses to interrogatories has or have ever been convicted or pleaded guilty to any criminal offense, give the date of each such plea or conviction, the name and address of each court or other tribunal (including military and/or foreign) before which such matter was heard, and state the final disposition/sentence in each such matter.

ANSWER: No.

                                Plaintiff,
                                Robert Pine,

*/s/ Robert E. Pine*

As to Objections:

*/s/ Karen Augeri Benson*
Karen Augeri Benson
Law Office of Alan A. Amaral
251 Bank Street
Fall River, MA 02720
TEL: (508) 676-0011
BBO# 628469

Dated: January 17, 2005

### Certificate of Service

I, Karen Augeri Benson, attorney for the above-named Plaintiffs, certify that a copy of Answers of Robert Pine to First Set of Interrogatories of Defendant, Jean Arruda, was mailed, postage prepaid on the 18 day of January, 2005, to John B. Reilly, Esq., John Reilly & Associates, 300 Centerville Road, Summit West – Suite 330 Warwick, Rhode Island 02886 and to to Lauren Motola-Davis, Esq., Morrison Mahone, LLP, 121 South Main Street, Suite 600, Providence, Rhode Island 02903

*/s/ Karen A. Benson*
Karen Augeri Benson

10